LOUIS JAMES MENENDEZ, ESQ. (ABA # 7811118)
227 7th Street
Juneau, Alaska 99801
Telephone: 907/ 586-5996
FAX: 907/ 586-2206


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **LATE FILED** |
| | ) | **SENTENCING** |
| | ) | **MEMORANDUM**[1] |
| JOSEPH R. JUNKER | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | Case No. 1:05-cr-003 (JWS) |

COMES NOW the defendant JOSEPH R. JUNKER, by and through his attorney, Louis James Menendez, Esq., and submits this Sentencing Memorandum Filed Under Seal.

At a time, when some criticize America's young men and women as idle and being without direction — we have Mr. Junker. At 23 years of age, Mr. Junker is a young man. A young man who is hardworking and maybe more mature than many of his contemporaries. He is industrious and skilled. He does not offer excuses. He does not come from a family of wealth or great prestige. His mother and father are middle-class

---

[1] On March 28, 2006, the defense was unable to successfully "log on" for purposes of electronically filing this document. The due date for the document was March 28, 2006.

Sentencing Memorandum
Case No. 1:05-cr-003 (JWS)
March 29, 2006

1

Alaskans. Like them, Mr. Junker is a hard worker. He is also a "self-starter." Mr. Junker has no criminal history. There are no accusations of other "sales." There are no claims of bragging behaviours that he will provide drugs. Notwithstanding this offense and accusations, Mr. Junker's future remains bright. If Mr. Junker's work history provides us any information, it is he will likely be "back on the job" as soon as he is released from prison. And, he will be welcomed back by his employer. Mr. Junker is respected and loved by his friends and family who provide him with enormous support. Likely due to his entry into the work world as a young age, Mr. Junker presents as a person "older" or more adult than his years would suggest.

That said, what went wrong with Mr. Junker? Perhaps an explanation presents itself in such disturbing behaviours as Mr. Junker's use and addiction to OxyContin from September 2004 — March 2005,[2] and his willingness in June 2004 to carry drugs in his truck from Seattle to Juneau. Mr. Junker reports to defense counsel that he quit OxyContin "cold turkey." Junker has neither been evaluated for drug dependency or received treatment for his drug use.[3]

Mr. Junker's contact with the police on June 23, 2004, was timely. It could be reasonably asserted that Mr. Junker needed

_____

[2] OxyContin contains oxycodone, a very strong narcotic pain reliever similar to morphine. OxyContin is designed so that the oxycodone is slowly released over time, allowing it to be used twice daily. Taking OxyContin daily can result in physical dependence, a condition in which the body shows signs of narcotic withdrawal if the OxyContin is stopped suddenly.

[3] The defense requests the court recommend Mr. Junker for evaluation for purposes of participation in the Federal Bureau of Prisons' drug and alcohol treatment program (DAP).

a "wake-up call" reminding him of the blessings in his life and the risks he was taking.

There is no excuse for Mr. Junker's actions. He has never excused his conduct or blamed others for his arrest and conviction. He failed himself, family, and friends. If this Court and the government are to carry one truth away from this case -- it is this: Mr. Junker has privately ashamed by his actions and, much more important to Mr. Junker, he is ashamed that he has publicly shamed his family. For Mr. Junker, it is this shame and failure that will forever keep Mr. Junker from entering another courtroom as a criminal defendant.

It is note worthy, that early in the process, Mr. Junker made the choice to cooperate with the government. Mr. Junker did what he could to assist the government. Government agents debriefed Mr. Junker several times over a period of months. They continued to debrief him until December 2005. He was put "on the street" to gather information and to do what was necessary. Mr. Junker complied. This marriage of the government and Mr. Junker, the text of film scripts, was something real for Mr. Junker. The agents wanted information and results. The reality was that Mr. Junker was "burnt" and whatever he produced was arguably dated or tainted.

All debriefings were to occur in defense counsel's presence or with defense counsel's prior approval. Defense counsel travelled from Juneau to Fairbanks and, later, Anchorage, to meet with government agents and Mr. Junker. That said, without

defense counsel's approval or notice to the government's attorney, over the 2005 Christmas holidays, when Mr. Junker was incarcerated at Lemon Creek Correctional Center, government agents "pulled" Mr. Junker for a debriefing. When the government's attorney heard of the debriefing, he immediately contacted defense counsel to apologize for the misunderstanding on the part of the government's agents. Perhaps telling of Mr. Junker's continuing maturity, growth, and his acceptance of responsibility was his response to defense counsel's criticism of the agents' conduct. Mr. Junker commented that he knew that either defense counsel should have been present or approved of the debriefing in advance.  Still, Mr. Junker chose to speak to the agents because "I did not see a problem, I told them what I knew."

There are a number of "givens" in this case.  One of which, and perhaps the most important for purposes of deterrence of others and the social condemnation of Mr. Junker's conduct, is that Mr. Junker is going to prison. Regarding Mr. Junker's deterrence, Mr. Junker has been deterred from further criminal conduct. Further, the public need does not need to be protected from Mr. Junker.

Thus, the question that remains is how long should Mr. Junker be in prison and why. Based only on the straightforward arithmetic of the presentence report calculations, Mr. Junker falls at a total offense level of 21 with a guideline imprisonment range of 37 - 48 months.  Again, Mr. Junker has no

criminal history.    That length of time in prison is just too much time. The cold calculation of an offense level 21 fails to recognize who Mr. Junker is, perhaps why he committed the offense he did, what he had done since the offense, and his prospects for rehabilitation. That said, a prison sentence at the lower ranges of an offense level 16 would be consistent with the facts of this case and the person of Mr. Junker and comply with the factors set forth in 18 USC sec. 3553. Mr. Junker is going to prison as a young man and Mr. Junker will leave prison a young man.   The addition of the months or years in prison as a result of an imposition of the guideline range resulting from a total offense level 21 is not justified. The defense asks this Court to give Mr. Junker the benefit of any doubt and sentence him to prison to a period of imprisonment commensurate with the offense and the offender.

RESPECTFULLY SUBMITTED THIS at Juneau Alaska, this 28st day of March 2006.

S/Louis James Menendez

Louis James Menendez, Esq.
227 7th Street
Juneau, Alaska 99801
Telephone: 907/ 586-5996
FAX: 907/586-2206
ljmak@ptialaska.net
ABA # 7811118

I certify that a true and
correct copy of the foregoing
were served on
Frank Russo, Esq.,

Sentencing Memorandum
Case No. 1:05-cr-003 (JWS)
March 29, 2006

counsel of record for
the Government via electronic filing
on the 29th day of March 2006 at
the following location:


Office of the United States Attorney
222 W. 7th Avenue
Anchorage, Alaska 99513-7564


 S/Louis James Menendez
 _____
 Louis James Menendez